Good morning, your honors. May it please the court, my name is Steve Schneck and I represent Sandra Gardner, the appellant. I'd like to begin with a simple reflection. If Dora Cervantes had traveled just once to her second home in Houston to visit her family and friends and falsely claimed that it was a business trip, I don't think we'd be here talking about this. But there's much more evidence in the record than false claims about one trip to Houston. After Cervantes... Why would that matter? I would take your claim would be the same from our perspective if it was once or a thousand, right? So I'm not, I guess I don't understand why that, why that matters. Do you think that there's like a materiality threshold in the statute?  Why, why does that matter? The only point I was trying to make, your honor, is that if it happened once, it would still be, it would still be a breach of fiduciary duty. But perhaps... You could bring the same, you could bring the same applicant. The legal questions that we would have would all be the same. That's right. Absolutely. Absolutely. I was just trying to make the point about the gravity of the misconduct and the evidence in the record. The evidence in the record here is that after Cervantes had been moved at union expense to Maryland near the union's headquarters, and after she became the union's treasurer, she traveled to Houston 50 more times than any other city with union members, often on weekends and holidays. Of course, Cervantes can travel and visit Houston as often as she likes. But repeatedly submitting false claims that her extraordinarily high number of visits to Houston were business trips means that she stole money from the union. That's a breach of trust, and it's a breach of fiduciary duty, and that's why we're here today. In addition to answering the court's questions, I'd like to address three issues. First, the district court did not follow the applicable legal standards. Sandra Gardner filed a verified application seeking leave to file a complaint for breach of fiduciary duty against Cervantes. The district court should have accepted Gardner's allegations, should have considered her evidence, and also drawn all reasonable inferences in her favor. Instead, the district court ignored Gardner's evidence and allegations and accepted the defendant's evidence and arguments, and that's incorrect. That kind of circumvents the questions of the preconditions that Congress attached to the filing of a complaint. I mean, this is an odd situation because normally one can, in the first instance, go into court with a complaint. But in this case, in Section 501, certain preconditions have to be filled, and they have to be followed. And Judge Chasnow indicated that the second notice of those conditions wasn't followed. This is an unusual cause of action because normally the cause of action just gives the plaintiff a chance to jump into federal court right away. But that's not the way this statute is drafted. That's absolutely correct, Your Honor. The applicant still has to get permission from the district court to file the claim. However, when the district court considers that application, the district court has to look at the allegations, look at whatever evidence is also supplied. The district court needs to look at whether the statutory steps were followed. That's correct. And in doing so, though, the record that's presented on those issues has to be considered under standards that are different from what the district court did here. What did the district court do wrong? Maybe let's get to that. What do you take the district court to have done wrong? There are a number of preconditions. We look at it with a standard. Maybe this happened 50 times. Maybe it happened once. But what are you asking us to find the district court erred on? The district court only addressed one of the two requirements, the demand requirement. And in addressing that requirement, the district court brushed aside Gardner's allegations and evidence and embraced the defendant's arguments and evidence. And found that just because the union had responded in some way to her demands, that she can't satisfy the demand requirement. That's incorrect. First of all, the point that I was trying to make before is that the evidence and the record that the district court considers has to be done under the standards of accepting the allegations as true and considering Gardner's evidence and drawing all reasonable inferences therefrom. So I guess maybe I'm not following. I may misunderstand your argument. I understood your argument to be more directly that there was a demand made here, and the demand was to do two things, conduct an accounting, and in the conjunctive, to bring suit. It was also to do a complete and full investigation. And I took your argument to be that by doing the accounting, one of the two things that I've identified as demands, that is not doing the two things that you asked them to do. You asked for two things. They did one. The district court then concludes that one must be good enough. That's part of the argument. I agree with that part, that, yes, they did something. Okay? They certainly didn't agree to bring suit, which is one of the demands. But on the thing that they did do, we also presented evidence that what they did was completely flawed. All right. But that's a secondary argument at some level, right? Yes. Even if we were to conclude that the district court could find that unaccounting was done, and so in that response, they responded maybe inadequately. I understand that argument. Yes. That would make no difference because you asked in the conjunctive for them to do two things.  They did one thing. Therefore, they did not comply with the demand. And therefore, this prerequisite in the statute plainly was satisfied. That's correct. And in your view, then we should stop and we should send it back to the district court and let the district court figure out whether the other elements have been met or not. Because that might require some factual development or sort of work on the record. That's one easy way to address the appeal because I believe completely what Your Honor says, that the district court was incorrect in finding that Gardner did not satisfy the demand requirement. And can you then, with that, focusing on that argument, you may want to make other arguments too, but focusing on that argument, the district court seemed to rely on this Eighth Circuit decision in Gould. Can you tell me why Gould is different and why it doesn't counsel for taking the steps that the district court took? Sure. First of all, Gould seems to suggest, the Eighth Circuit seems to suggest that so long as there's a response, in other words, so long as the union doesn't completely ignore the demands, that that's enough. That's wrong, just as Your Honor is saying. Why do you think it was wrong in that case? Because in that case, the demand that was made on the union was to take one or more of the following actions, and they listed out three actions. And so it seems like to me, if they then took one of those actions, they would have satisfied the demand. Had the putative plaintiff in that case said, we want you to do all three, the result would have been different. It seems like to me, the Eighth Circuit gets it exactly right. When you ask to do one or more of three things, doing one of those things satisfies the demand. When you ask to do two things, it requires doing two things. If I tell my law clerk over here to please go to the store and get me a sandwich and a Coke, and he returns with a sandwich, he will not be in my good graces. If instead I say, please go to the store and get me a sandwich or a hot dog, then returning with the hot dog is sufficient to satisfy the demand. Absolutely. That's the simple story we've got. That's right. You asked for a Coke and a sandwich, and in Gould, they asked for a sandwich or a hot dog. I might ask for a piece of fruit too, if that was okay. That's because we eat differently. Can I ask you an initial question about jurisdiction?  Is this a final order from the court? What about the count that didn't require permission at all? We didn't file the complaint. The complaint was only an exhibit to the application. So there's no complaint on file. There was never any complaint on file. There was no count two on file. It was part of what we proposed to file if we got leave to file the pre-trial. So it just doesn't exist at all? No, it doesn't.  It doesn't. If I can address Judge Richardson. Could I ask you a question, please? Sure. Absolutely. I think Judge Chasnow indicated that once the auditing report came through from Mr. Whittle, that you had some obligation to inform the union of what was wrong with the auditing report. And that you didn't do that. We never got the Whitham report until it was filed with the district court. Okay. So there was no Did you have a chance to identify the deficiencies in the Whitham report? We did that before the district court. We submitted four detailed declarations showing in specific ways how the Whitham quote-unquote investigation was completely flawed. Do you think you have such a duty? And if so, where do you think that duty comes from? Is it in the 501? Does 501 give you a duty? A duty to what? I'm sorry. A duty to inform why the investigation was incorrect. I don't think so. I don't think so. But because they filed it in response to the application, we presented evidence showing that the work of Whitham was actually very flawed. I don't know, Judge. It might be relevant to a good cause show. Absolutely. At the good cause stage, it might have some relevance. Exactly. On the demand level, it's really hard to see the duty you have. That's right. I agree with Your Honor. The district court says, well, you've got these questions about the Whitham report should have been raised to the IAM's executive council before Gardner sought to file a 501B suit. What do you say about that? Again, Your Honor, the timeline, the Whitham report was not given to Gardner. It wasn't made available. She didn't have it to respond to it until it was filed in April of 2024, which was after the application seeking leave to file a complaint was filed. Okay? Yes, it was dated a little bit less than two years before then, but Sandra Gardner didn't have it. If it had been sent to her, she would have responded to it, but it wasn't. If I can address Judge Richardson, you asked about the Gould case. I think, putting the legal question aside, there are several factual distinctions between that case and this one. In Gould, the plaintiff sued the union. In addition to the Section 501B application, he sued the union for wrongful termination, defamation, and intentional infliction of emotional distress. The evidence in that case seemed to suggest that the Section 501B action was an action to harass the union. There's no evidence, and there was no suggestion that Gardner harassed the union or that that was the motivation behind her action. The point was made that Gardner did not seek leave to bring a 501B claim until February 24th, and that was 18 months, at least the union contends. That was 18 months after the IAM had provided her with an investigation. That's right. So there's no statute of limitations here, I recognize, but there's a question of latches or what have you. So you're saying, well, we didn't get the report, but that wasn't what the district court found. She didn't seek leave to file a 501 claim until 18 months after IAM had provided her with the report. Your Honor, I think you may have misread or somebody misread the record. There's nothing in the district court's opinion that says that Ms. Gardner had the Witham report until after it was filed by the defendants in April of 2024. She was told in a letter from the union, there's no basis for your allegations. Okay, it's baseless. You're, you know, barking up the wrong tree, whatever it is. The opposing counsel says Gardner did not seek leave to bring a section 501B claim until February 2024, almost 18 months after IAM had provided her with the conclusions of the Witham investigation. Well, what he's referring to is a letter that says that Witham found that there's nothing wrong. One thing that concerns me about this is we're dealing with an extension of federal jurisdiction. These claims do not present a federal question, and there's no diversity requirement. And we've been told time and time again that where we're dealing with an extension of federal jurisdiction beyond federal question and beyond diversity jurisdiction, that we should construe that narrowly. And Congress wrote this statute with these preconditions, with the understanding that these union elections are perhaps right up there with elections for local sheriff and the kinds of acrimony that they engender. And, you know, rightly or wrongly, Congress did not wish to decapitate the labor movement with constant sore loser complaints. I mean, we can, you know, we can open up the doors and undoubtedly it would be damaging to unions. But I'm not sure that that's what Congress intended when it put down these preconditions. And so, you know, when we're dealing with an extension of federal jurisdiction, that's a big step. And Congress knew it was a big step, and they were very careful to say when a step could be taken. And I understand your argument, and you've got some time for rebuttal, and I'm glad to let my colleagues ask what questions they may. We're dealing with a fine district judge, and she identified why she didn't think the groundwork had been laid for the suit. And so I wish you would address that in rebuttal when you had a chance to listen to opposing arguments, okay? I was just going to briefly respond to what you just said about, Your Honor, what you just said about jurisdiction, if I can, if you want. I mean, Congress — Can you — no, I would like you to — I can respond to it. I just want you to respond to it on rebuttal, okay? Fine. Okay. Thank you very much. Thank you. Can you start with the factual question? There seemed to be a dispute about the Withram report. Was it provided before the application was filed? No, Your Honor. The report itself was not filed on July 29, 2022. The general counsel of the defendant, proposed defendant, IAM — Why didn't you give her the full report? She gave a detailed description of what was in the report, referenced the existence of the report. What page is the detailed description? Because when I read it, detailed was not the word that came to mind. It's at 113 to 114, where she talks about what Withram did in their investigation. What they did or what the report concluded? Well, what the report — it informed what the report concluded and detailed what steps Withram took in its report. And do you think from that description, a reasonable person would have the ability, as the district court seemed to suggest, that it should have explained why the report was wrong, based on the conclusory description that we've got on 113 and 114? Which just says, effectively, we did some stuff and we found no evidence of wrongdoing. Like, that's it. Like, there's not — there's not like a description of like, why she needed to go to Houston 50 times. I mean, I don't know whether she went once or 50. Is there confusion about that, too, maybe? But like, you don't think, based on this description at JA13 and JA14, that that was sufficient to allow a response to, you know, what effectively we now know is, you know, a report that they have responded to? Your Honor, I think there's sufficient detail in the letter for her to request the report. Rather than have filed an action and then tried to get good cause to show that she could file it, she should have first just come to the union under the demand requirement and said, I would like a copy of the report to see what the conclusions in detail were based on beyond what — But then there was an 18-month delay, wasn't there? Oh, and then suit was filed. As I understand it, there was — during that 18 months, there was no request. Correct. After the July 29, 2022 letter. She could have requested the report from Witham, but she waited 18 months. Yes, she waited 18 months to request the report. Correct. And that's not a hard thing to do, to just request the report and then identify the deficiencies in the report. Why she takes exception to those and bring them before IAM and the executive council. And if she's dissatisfied with that, the union is not responsive, then perhaps at that point you come into court. But there are these — you know, there are always going to be disgruntled losers in a labor election. And there's a real chance that this kind of lawsuit can really decapitate the labor movement. And that may or may not be OK. But when you read the statute, Congress did not want to inflict that kind of punishment. That's all I'm saying. Your Honor, I agree with that. And I think the reason for that, if you look at the structure of 501B, it is a derivative claim. And I think that is getting lost a little bit. It's a derivative claim brought on behalf of the union. It is not brought on behalf of the plaintiff. Any recovery goes to the union. And so the reason for the demand requirement in the first place is so that the union can look at the allegations, at the request, and determine whether it is worth union resources to pursue that claim. Well, that's the whole premise of the statute, is that the union ought to be given the first opportunity to address the concerns of members. And Judge Chazinow was saying, I don't think they had, even before we would reach the good cause requirement, she says, I don't think that she gave the union an adequate opportunity to understand what the member's concern was. That's right, Your Honor. Gardner, in the very opening line of her demand letter, says, I demand an accounting of whether Doris Cervantes traveled inappropriately and misappropriated funds. And if the accounting finds there are misappropriated funds, then I demand you sue her. They did not. I'm sorry. So please point me in the record to where it says, only if you find something do I demand that you sue. Where in the record am I looking for that language? And that is how I read JA-91, the very first lines. But I assume that you were reading it as if that's what she said. And so I'm just trying to make sure, what part of the language do you think, I'm turning to JA-91, do you think makes it a conditional request? We write to demand an accounting of the funds misappropriated and that the IAM bring suit to recover such monies. If there are no misappropriated funds. And bring suit. You added, if you make such a finding, then bring suit. I understand why you want to rewrite the letter, but that's not what the letter says. I think that's the reasonable interpretation. How can you lawfully bring suit if there's nothing to bring suit against? The point is, this statute is written in such a way, and I'm sure there are union officials that fall down on their job, and I'm sure there are misappropriation of union funds. But what I read the statute is saying is that you should give the union officials a chance to correct their own errors. Point out to them what the errors were. That's fundamental to it. And then, fine, you can bring suit. But this sort of suit, if you sort of hurdle over those, is very damaging to the labor movement. And it may be fine, but the question is, did Congress intend to inflict that sort of damage? And I thought the basic premise, which Judge Chastin identified, was that you've got to give the leadership of the union a chance to correct their errors. And she never made a request for the report. So how can the union correct this? How can the union move in accordance with the statute? How can it correct if you don't understand what the problem that Ms. Gardner had with it? That's exactly our point, Your Honor, on the demand requirement. And it did not ignore her in the first instance. It hired an outside accounting firm who is one of the 25 largest firms in the country. They assigned a certified fraud examiner, a CPA with more than 20 years' experience, to conduct this investigation. And the investigation concluded that there was no wrongdoing. And so she was not ignored. There was no refusal or failure to conduct the accounting to see if there was misappropriation. The union may have taken different action if the Witham report was different, obviously. And so we believe that she fells under the demand requirement. But in addition, there's two additional reasons why Gardner fells, and you can affirm the district court even though the district court did not reach it, under the good cause standard. For two independent reasons she fells under good cause. The first is latches. As Your Honor alluded to, not only did she wait 18 months before bringing this suit, but prior to that she waited a full 14 months to even bring the alleged misappropriation to the union's attention. So we're dealing with an almost three-year period in which before Gardner came to court. Now, when you look, we have to look at latches because 501 does not have its own statute of limitations. But the courts have used latches to factor into the preconditions, have they not? Yes, exactly. But even if we were to look at the analogous state statute of limitations, which you can factor into the latches analysis, we'd see that if the union were to bring this claim, remember it's a derivative suit. So you have to look towards the state statute for a shareholder derivative action, which is the analogous state statute. And when you do that, you say, well, if the union brings the claim, would it be timely? And if the union were to bring the claim, you look at the knowledge of the union. And we have in the record an acknowledgment that Cito Pantoja, a declarant on behalf of the plaintiff here, knew about this alleged misappropriation in November of 2020, and he was on the executive council of the union at that time. So the union had knowledge more than three years in advance. And so if the union were to bring this claim, it's time-barred, which factors into the latches analysis about why the court should not permit it to proceed now. And prejudice, which is the other factor in latches, can be inferred when the claim is otherwise untimely. In addition to latches, Gardner fails because the claim, the decision of the executive council not to bring suit based on the Witham report, was not objectively unreasonable. Now, that is a standard that only the Fifth Circuit has applied in Hoffman v. Kramer. And the way Hoffman articulates it, it's not as a different standard. It's just a more specific analysis. And under that standard, the court looks to whether the decision was objectively unreasonable. And that makes sense, again, because it's a derivative action. Just like in the shareholder derivative context, you examine the business judgment rule when a corporation decides not to bring a suit based on a shareholder demand. To decide that, we would have to take the Witham report and compare it to the objections and declarations that were filed and sort of figure out whether those objections or complaints about the Witham report are legitimate or not legitimate. In order to find that, that's what we would need to do. We'd take the sort of adversarial system. You'd get the Witham report. She's filed these objections to the report. And so we would need to, like, decide that her objections or complaints are unsupported and your decision was reasonable. No, I think what you have to do is you take what was in front of the executive counsel at the time, which was the Witham report, and determine whether the decision to not sue based on the Witham report was an objectively unreasonable decision. And you can take into account, I suppose, what she now claims are the deficiencies in the Witham report. But you have to go into the executive counsel's decision-making at that time to determine whether that decision was itself objectively unreasonable. I just keep coming back. Maybe I'm oversimplifying it here. But I just, she waited so long to request the report. The union itself did not want to sue. The report was an independent counsel report. The independent counsel hired expert accountants to look at the TRIPS. The report indicated that the TRIPS were supported. And the report was never requested. The union officials were never given a chance to correct the problem, if they knew what the problem was. I just, I can't understand what the district court did wrong, and I'm hard-pressed to find out what the union did wrong. I know there's a lot of, maybe a lot of corruption that needs to be ferreted out in labor elections. I would be sympathetic to that. But given this particular situation, Congress did not want these suits brought at the drop of a hat. And you have here an extension of federal jurisdiction. And we have been told time and time again that when you have an extension of federal jurisdiction, there's no federal question intrinsically here. There's no diversity requirement. It's an extension of federal jurisdiction. And we're told by the Supreme Court to take those kinds, to take narrow interpretations where extensions of federal jurisdiction are involved. And this seems to me, this suit seems to me to throw the door wide open, too wide open for an excess of what Congress had intended. Your Honor, I agree with that. And I'd say further that what Congress intended is that, and the Hoffman v. Kramer case most articulately says this, is that Congress intended democracy, union democracy, would take care of these quote-unquote rogue officials, which are not the case here. And that actually is what happened here. Before this case was brought in the 2021 GST, General Secretary-Treasurer election, the opponent of Dora Cervantes, Ian Anderman, requested all of these documents regarding Dora Cervantes' travel records, were provided them, posted them on her website, and it was the heart of her campaign to the membership that Dora Cervantes is misappropriating funds by traveling to Houston too much. That was the core of the campaign and not a court, but the membership, the membership rejected it, wholeheartedly rejected it. Dora Cervantes was reelected with more than 60 percent of the vote. And that's what Congress intended to solve any potential problems under the LMRDA. Well, in terms of what Congress intended, all that's a good point in what you're saying, what Judge Wilkinson said, but it also intended to be a door open for individuals to say, if the union won't act, you can force them to do so. Yes, there are hurdles, and this was laid out. But I have a question about how high that hurdle is. You mentioned about defining, and Judge Wilkinson asked about, it seems to be really bare bones and conclusory as to what that was, and then later on you did it several months later. But the question is this, hypothetically, let's say, as here, you have an independent accounting, well-heeled, you say in the top 25 in the country, but if she also had an accounting firm to look at what was provided to her and also came to a different conclusion, is it your position that as long as yours was not objectively unreasonable, she loses her requirement to show good cause? Well, I think there's two separate questions there. There's the demand requirement and the good cause requirement. Yes, I'm talking about the good cause. You're talking about good cause.  Under good cause, if two different accounting firms' reports were put before the executive council and one concludes that there was misappropriation and one concludes that there was not, I think what the standard would be is whether that decision to rely on one but not the other is objectively unreasonable or not. And I think in that hypothetical, it really would depend on the executive council's reasoning, which they may put in a letter or in a resolution, so that the court can make a determination of not just that, I like ours, it's better, but whether there was a reasoned decision about why that particular accounting firm's report was better than the other. If it was, then I don't think the court should say that the decision to not follow the other report was objectively unreasonable. So it almost makes it almost impossible to show good cause. Well, I think the cases where 501 was really intended to address were when the union does nothing. Had Gardner sent her demand and the executive council... It's not like they put a fig leaf up, right? They just got to get some guy who, you know, went to college and has an accounting degree. I don't know why the top 25 matters under your theory, right? Somebody who will stand up and say, I've looked at this and I've concluded that there's no fraud that's taken place. And at that point, what you're saying is that that's the only information that's before the union. That's all we can look at. We can't look beyond that because that's all the information that they chose to put in front of themselves. On the objective unreasonable standard? Yeah, your line is that would be like more than sufficient, right? I wouldn't say that's more than sufficient. It's sufficient under your theory. If the plaintiff in that case comes to court and puts in overwhelming evidence that it truly was a sham. It truly was a sham. And not just that they didn't interview one witness. Your line is that the 501B threshold, like get into court requirement, requires overwhelming evidence of a sham? That's a higher bar to get into court than it is to prevail in court. It's literally a higher bar to get in. You just set a higher bar to get into court than it is to like win before a jury. Just to be clear, we're talking about good cause now, right? We're not talking about the demand requirement. On the good cause requirement, it's just how the court would interpret objectively unreasonable. And why do we take objectively unreasonable out of good cause? I mean, that's the Hoffman case. That's from the Hoffman case. The Fifth Circuit decided that good cause means objectively unreasonable based on whatever information the board chose to put in front of themselves at the time. They don't go as far as to define it as what the board chose to put in front of itself at the time. So it may be that it would be fair for the court to look at what evidence is put before it to determine whether the decision was objectively unreasonable. But I thought you said, and I'll stop, but I thought you said earlier, no, it's like what was in front of the board at the time, right? So like it literally doesn't matter, right? They're going to get my 7-year-old. It's like crayon. She writes no bad, right? They hand it to the board, right? And the board says, you know, says no bad. So we're going to like cruise on here. That's good from your perspective. No, that's not good. I mean, that shouldn't work, and there should be an opportunity for the plaintiff to show why the decision was objectively unreasonable. But there's no evidence here that the Witham report was a fig leaf or that the Witham report was a sham. That's correct. I mean, that's, there may be some situations like that, but there's been no showing here that this report was a sham. And if a union can't protect itself by having an independent, I've never seen any attack upon the credentials of this firm that was hired to conduct the independent audit. As far as I know, they're a professionally qualified firm. They hired people to look into it. And the idea that a group that hires independent auditors and come back with conclusions that are not what the loser in the election wanted, but this is not a fig leaf. This was an honest attempt to find out whether these complaints were legitimate or whether they weren't. The conclusion was that they weren't. And the union, in addition, it never got the chance, even after doing what it did, it never got the chance to correct its own errors before it was hit with a lawsuit. And, you know, whether that's right or wrong, I don't know. But it certainly seems to me what Congress intended. Number one, that the union take some steps through an independent body to verify or to reject the member's claim. And number two, that union members, that the union be given a chance to know what mistakes are alleged and to correct those mistakes. I think that's what the statute wants. We agree, Your Honor. My time is up. Do you think for you to prevail, we have to conclude that the union made an honest attempt to uncover fraud? Like, that is ambiguous to us on appeal, just given what we've got. Do we have to send it back and let there be, like, discovery in a trial to determine whether that's true or false? No. I think all you have to look at is whether the union refused or failed to conduct an accounting. If you determine that they conducted an accounting, which I think it's undisputed that they did, then we prevail because that is all we needed to show.  Thank you, sir. Thank you. We urge you to affirm the district court. I'd just like to address a few points briefly, please, Your Honors. First of all, if this was a case brought by somebody who lost an election and was trying to hurt the union movement or in this union itself, I wouldn't be here before, Your Honor. And this case never would have been filed. Sandra Gardner is not somebody who lost an election. She's somebody who's dedicated her life to the union as a union employee and is only interested in protecting the union and its integrity. That's why this case was brought. And there is actually evidence in the record about with them not being necessarily the best of all accountants to talk to. And it's in our opening brief, and it's something that the district court ignored. The Public Company Account Oversight Board, which is a nonprofit corporation established by Congress to oversee public audits, in February of 2024, they fined Witham $2 million and imposed discipline and oversight because of Witham's failure to comply with quality control standards. That's in our opening brief at pages 28 and 29. Next, there is plenty of evidence in our declarations and in our briefs that there was not a genuine and thorough investigation by Witham. The only people that the auditor from Witham interviewed were the two people accused of wrongdoing, Cervantes and Martinez. There were plenty of people that Witham could have and should have interviewed, Houston local officers, Houston members, Joseph Tiberi, Cito Pantoja, all of whom could have confirmed or rejected her claims that she attended meetings in Houston when she clearly did not. In the first demand letter, Sandra Gardner pointed to specific documents that they should look at, including attendance sheets and sign-in sheets, minutes from meetings. Witham did not look at those. That's undisputed. Witham also didn't look at the bylaws. The bylaws from the locals tell you specifically what days of the month or what days of the week and how often during the month certain meetings are supposed to be held. Well, Doris Cervantes claimed in her expense reports that she attended meetings on dates when they clearly didn't occur because that would be inconsistent with the schedule. Lee, what chance was the union leadership given to correct what you allege to be its mistake? I mean, Judge Chasnow simply indicated that these complaints that she had should have been addressed before the IAM leadership, but they weren't brought. They were brought. They were brought. The whole issue of Doris Cervantes traveling repeatedly to Houston was brought in the first demand letter by Gardner on May 5th of 2022. She told them to look at the weekly expense reports. She told them to look at the minutes from meetings. She told them to look at the attendance sheets from meetings. Did she request the Witham report? She did not request the Witham report. No, she did not. That's part of my problem. I don't understand why she wouldn't request the report and say this is a sham. Do you think she had a statutory obligation to make a second demand for a report after her first demand to bring suit was rejected? Absolutely not. No. And I also think that, you know, given her experience and history with the union, the union's response... There is an obligation. Isn't there to make a second demand here? It's a two-step process. The first demand is for the union to take some action pursuant to a derivative suit, and the demand is that the union take some action. Okay. In response to that demand, Witham was hired. Then there is a second step, and there is a second demand that needs to be made. If the response to the initial demand was inadequate or left holes or had a problem, and that was not done. But there are two demands. It's one to demand action, and then if the action is inadequate, identify the inadequacy and demand that the union itself clean it up. And if they don't, go right to court. I don't think that's how the statute is written, Your Honor. I think the statute allows and first imposes a fiduciary duty, a duty of trust on the officers of the union to protect the union's property. Then it allows a union member, in this case Sandra Gardner, to bring a demand that the union do bring suit if there's a breach of fiduciary duty, or to request an accounting or other appropriate relief. To Judge Richardson's point early on, she requested all of those things. Okay. In a timely fashion? Yes. Yes. No. There was a significant delay here after the election and after the report. There were delays all along the line. She was first made aware of this information in March of 2021. It was an issue in the election, wasn't it? It was an issue in the election. How could she have been unaware? That was the centerpiece of her campaign. It wasn't in the election, Your Honor. She wasn't a candidate. Well, it was a central issue in the election. Yes. The excess travel was an issue there. At any rate, I'm going to ask my colleagues if they have further questions of you. Roger. Thank you. Thank you. Thank you, Judge. I'll ask the courtroom deputy to adjourn court. We'll come down for counsel.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Julius N. Richardson